IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MARK D. EBERRA,**

                **Plaintiff**,

v.

**WAL-MART ASSOCIATES, INC., et al.,**

                **Defendants**.

Case No. 25-2307-DDC-ADM

**MEMORANDUM AND ORDER**

    Pro se[1] plaintiff Mark D. Eberra has sued a series of Walmart entities and employees. He alleges unlawful race discrimination and retaliation under state and federal law.  Now, plaintiff has filed an Ex Parte Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9).  His filing asks the court to enjoin defendants from "retaliating against, isolating, influencing, or disciplining any actual or potential witness in this case or related investigations[.]" *Id.* at 15.  This Order just resolves the temporary restraining order part of plaintiff's motion—not the preliminary-injunction request.  The court denies plaintiff's TRO request.  Plaintiff hasn't satisfied the formidable TRO standard, so he's not entitled to extraordinary relief at this stage of the proceedings.

---

[1]     Plaintiff proceeds pro se, so the court construes his pleadings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers).  But the court does not assume the role of plaintiff's advocate.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  And our Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants."  *Id.* (citation and internal quotation marks omitted).

I.     Background

Plaintiff alleges that defendants unlawfully discriminated against him on the basis of race and retaliated against him for protected activity. He asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Kansas Act Against Discrimination for race discrimination and retaliation. Doc. 1 at 43–54. Shortly after filing his lawsuit, plaintiff filed an Ex Parte Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9). The court recounts the allegations relevant to this motion, next.

### *TRO Allegations*

Plaintiff alleges that Walmart employees had "previously contacted [him] with evidence and firsthand accounts of retaliation[.]" Doc. 9 at 3. Now, according to plaintiff, those same employees have "stopped communicating with" him or have "shunned [him] in public." *Id.* at 3, 5. Plaintiff also says that those previously supportive employees have reported "a chilling effect of fear about termination" and "being blacklisted from working at Walmart[.]" *Id.* at 4.

Also, Walmart promoted one of the managers who participated in defendants' "retaliatory scheme" to terminate plaintiff. *Id.* Plaintiff asserts that he's received information that Walmart hosted a secretive celebration for that manager, held in an unusual location and including only people involved in or supportive of defendants' illegal scheme to push plaintiff out of his employment. *Id.* at 5. From this allegation, plaintiff concludes that Walmart is "sending a chilling message to others about the consequences of reporting or opposing discrimination or retaliation." *Id.*

Plaintiff also alleges that Josh Holden—a Walmart employee and defendant in this case—"openly displayed the legal papers" from this case "to other store employees and made disparaging statements, including that [p]laintiff 'has no chance if he is representing himself.'" *Id.* at 5–6. According to plaintiff, "this conduct was calculated to silence potential witnesses,

discourage them from testifying, and chill any future complaints about unlawful conduct[.]" *Id.* at 6.

Separately, plaintiff alleges that defendants "engaged in the concealment and destruction of key financial performance records that documented [p]laintiff's measurable contributions to Walmart's bottom line." *Id.*

Finally, plaintiff asserts that he has applied for "15 to 20 team lead and management positions for which he was well qualified." *Id.* at 8. But, he says, he hasn't received a single offer from those applications, leading him to conclude that defendants "are actively blacklisting" him and "disseminating false or retaliatory disciplinary records" to those prospective employers. *Id.*

The court now explains the governing legal standard for a TRO.

## II.     Legal Standard

A party seeking a TRO must show: (1) that he's substantially likely to succeed on the merits; (2) that he will suffer irreparable injury if the court denies the requested relief; (3) that his threatened injury without the restraining order outweighs the opposing party's injury under the restraining order; and (4) that the requested relief is not adverse to the public interest. *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).

A plaintiff seeking preliminary relief must make a "clear and unequivocal showing" on all four requirements. *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021) (quotation cleaned up). And, in our Circuit, when "the failure to satisfy one factor is dispositive, a court need not consider the other factors" for preliminary relief. *Id.* at 890 (declining to consider the remaining factors where plaintiffs failed to show irreparable harm). The decision whether to issue "a temporary restraining order or other preliminary injunctive relief is within the sound discretion

of the district court." *Sac & Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 906 (D. Kan. 1995).

**III.     Analysis**

Plaintiff can't overcome the exacting TRO standard.  On this record, plaintiff hasn't shouldered his burden to show that he'll suffer irreparable harm absent the extraordinary remedy of a TRO.  "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Plaintiff's allegations fall into a few different buckets:  witness chilling, celebrating perpetrators of discrimination and retaliation, evidence destruction, and blacklisting.  Plaintiff can't establish irreparable harm for any of these events.  Take them in turn.

**Witness chilling.**  At bottom, plaintiff's allegations that defendants are chilling supportive witnesses describe discovery issues.  Plaintiff asserts that previously supportive Walmart associates now have turned collectively a cold shoulder to him.  Doc. 9 at 3–4.  And he contends that by declaring that plaintiff will lose his lawsuit, defendants have chilled other witnesses from supporting plaintiff's claims.  *Id.* at 5–6.  Even assuming that defendants somehow violated the law—and the court isn't sure how they did—plaintiff hasn't explained why he can't use the discovery process to elicit the testimony he aspires to collect from Walmart's employees.  That is, should plaintiff's case proceed to discovery, plaintiff can use mandatory legal process to compel responses from Walmart's employees.  Any risk that plaintiff can't use legal process to secure the testimony he wants is thus "speculative or theoretical[,]" which won't do to warrant preliminary injunctive relief.  *See Colorado*, 989 F.3d at 884.  So, these allegations don't satisfy the irreparable-harm prong.  *See Geiger v. Z-Ultimate Self Def. Studios LLC*, No. 14-cv-00240-REB-BNB, 2014 WL 4212737, at *2 (D. Colo. Aug. 26, 2014)

(concluding that rumors of witness intimidation didn't "show a prospect of immediate and irreparable injury"); *Wojdacz v. Presbyterian St. Lukes' Med. Ctr.*, No. 15-cv-2083-WJM-KLM, 2017 WL 631679, at *4 (D. Colo. Feb. 16, 2017) (declining to issue TRO where plaintiff's vague allegations about witness intimidation didn't establish immediate, irreparable harm or allege that harms would continue).

**Celebrating alleged perpetrators.** Plaintiff's allegations about Walmart promoting and celebrating the people allegedly responsible for his retaliation and discrimination fare no better. Plaintiff asserts that Walmart threw a secretive celebration for those purported perpetrators, which, according to plaintiff, deters other associates from coming forward with discrimination and retaliation claims. Doc. 9 at 5. This allegation doesn't warrant emergency relief for two reasons. *First*, plaintiff lacks standing to assert injuries based on these other associates' experiences. Plaintiff hasn't explained why Walmart's conduct has caused a "concrete harm" to him. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("No concrete harm, no standing."). Without that explanation, plaintiff isn't entitled to relief. *Second*, plaintiff doesn't allege that Walmart will continue to host these allegedly damaging celebrations, so plaintiff hasn't made a clear showing that he'll suffer irreparable harm without court intervention. *See Wojdacz*, 2017 WL 631679, at *4 (declining to grant TRO where plaintiff didn't explain how alleged defendant misconduct "will continue" (quotation cleaned up)); *see also Denv. Homeless Out Loud v. Denver*, 32 F.4th 1259, 1278 (10th Cir. 2022) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief." (quotation cleaned up)).

**Evidence destruction.** Plaintiff next alleges that after he reported retaliation, a box of records—which "documented [p]laintiff's measurable contributions to Walmart's bottom line"—disappeared. Doc. 9 at 6–7. Once more, plaintiff hasn't shown clearly and unequivocally that he'll suffer irreparable harm absent emergency relief. *See Colorado*, 989 F.3d at 883. Plaintiff hasn't alleged plausibly that defendant will destroy other records. So, it's unclear how injunctive relief will resolve this issue. *See United States v. Sum of $70,990,605*, 991 F. Supp. 2d 154, 163 (D.D.C. 2013) (denying injunctive relief where plaintiff's evidence-destruction claims fell "well short of the imminence required"); *see also It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1335 (S.D. Fla. 2013) (denying injunctive relief where plaintiff didn't allege that defendant was "likely to damage or destroy its business records or other evidence relevant to th[e] case").

What's more, plaintiff hasn't explained why ordinary discovery processes won't cure any harm derived from evidence destruction. For instance, should plaintiff prove he deserves one, an adverse inference instruction likely would remedy defendants' allegedly unlawful destruction of evidence. *See Turner v. Publ. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) ("Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." (quotation cleaned up)).

**Blacklisting.** Finally, plaintiff alleges that he has applied for many jobs for which he is "well qualified." Doc. 9 at 8. Still, he asserts, he hasn't "received a single offer from those applications." *Id.* The court won't grant a TRO based on this accusation, either. As an initial matter, plaintiff hasn't adduced any evidence that defendants are responsible for his job-seeking difficulties. Any possible connection between defendants' conduct and plaintiff's struggles to

6

find new employment is too tenuous to overcome the exacting TRO standard. And as other courts have explained, conclusory allegations like this one are insufficient to warrant preliminary injunctive relief. *See Sum of $70,990,605*, 991 F. Supp. 2d at 164 ("Conclusory statements of what has occurred without factual support is insufficient to justify the extraordinary remedy of a preliminary injunction."); *Wojdacz*, 2017 WL 631679, at *3 (denying TRO based on plaintiff's "conclusory statements" about defendants' conduct (quotation cleaned up)).

Also, even assuming defendants have published or shared defamatory information about him, plaintiff hasn't explained why money damages wouldn't suffice to remedy his injuries. Without that explanation, he can't secure emergency injunctive relief. *See Colorado*, 989 F.3d at 884 ("To merit preliminary injunctive relief, a movant must present a significant risk it will experience harm that cannot be compensated after the fact by money damages." (quotation cleaned up)).

In short, plaintiff can't prove that he'll suffer irreparable injury without court intervention for any of his allegations.

Even if he could, though, one final nail in the coffin plagues all of plaintiff's allegations. Plaintiff hasn't shown that his injuries from defendants' allegedly unlawful contact are imminent. "The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman*, 348 F.3d at 1189 (emphasis in original) (quotation cleaned up). Thus, even if plaintiff had proved that he faces irreparable harm, he hasn't explained why he'll suffer *imminent* harm without emergency intervention before an adversarial hearing. *See Sum of $70,990,605*, 991 F. Supp. 2d at 164–65 ("The claimants have not provided any evidence demonstrating why an order to protect witnesses from [opposing party] threats and to preserve evidence from

[opposing party] destruction, if ultimately found to be warranted, would not be a sufficient remedy."). Take the witness chilling allegations as an example. Plaintiff hasn't explained why relief now is any different than relief after an adversarial process. Without that explanation, plaintiff can't win emergency injunctive relief. *See Heideman*, 348 F.3d at 1189.

The only urgency plaintiff plausibly alleges is that "two supportive associates and individual witnesses have died" after he filed his Complaint. Doc. 9 at 5. Thus, he says, there's "an urgent need to preserve testimony from remaining living, willing, witnesses." *Id.* The court isn't persuaded. Plaintiff hasn't explained why defendants are responsible for those witnesses' deaths. It's also not clear how plaintiff's requested relief—namely enjoining witness retaliation—would preserve witness testimony against such a potentiality. It's plaintiff's job—not the court's—to make his case. If he needs to preserve admissible testimony from dying witnesses, the rules provide the tools to do so. *See* Fed. R. Civ. P. 26(d)(1) (explaining that discovery may proceed before the parties have conferred under Rule 26(f) "when authorized by these rules, by stipulation, or by court order"); *cf.* Fed. R. Civ. P. 27 (authorizing depositions to perpetuate testimony in some situations). But that's not the request plaintiff has made. None of the harms that plaintiff's requested TRO could remedy are imminent. Nor are they irreparable.[2]

---

[2] To be sure, "the court always has the inherent power to protect witnesses who may appear in a case pending before the court." *Geiger v. Z-Ultimate Self Defense Studios (Geiger II)*, No. 14-cv-00240-REB-BNB, 2014 WL 7012387, at *2 (D. Colo. Dec. 11, 2014) (citing *Wheeler v. United States*, 640 F.2d 1116, 1123 (9th Cir. 1981)). "When presented with evidence that witness intimidation may in fact impair the proper administration of justice, the court may act to protect parties, witnesses, and counsel from such intimidation." *Id.* To that end, some courts have found that "[t]hreatening witnesses may implicate irreparable injury." *Sum of $70,990,605*, 991 F. Supp. 2d at 162; *see also Arrendondo v. Delano Farms Co.*, No. CV F 09-1247, 2010 WL 3212000, at *2 (E.D. Cal. Aug. 10, 2010) (granting TRO based on plaintiffs' allegations that defendants had engaged in witness intimidation).

But, as the court already has explained, plaintiff hasn't carried his burden on the current record. He hasn't alleged that defendants threatened potential witnesses. *See Sum of $70,990,605*, 991 F. Supp. 2d at 163 (denying preliminary injunction where the "claimants have not provided evidence of . . . threats"). What's more, cases where courts have granted TROs based on witness threatening have involved threats against those actively involved in the litigation. *See Arrendondo*, 2010 WL 3212000, at

Earning the extraordinary relief of a TRO requires parties to overcome a formidable legal standard. Here, plaintiff can't overcome that standard. He hasn't made a "clear and unequivocal showing" that he'll suffer irreparable harm absent emergency intervention by the court. *Colorado*, 989 F.3d at 883. Without that required showing, the court can't grant a TRO. *See Sampson v. Murray*, 415 U.S. 61, 91–92 (1974) (explaining that absence of irreparable injury is fatal to a TRO); *Colorado*, 989 F.3d at 886 ("The party seeking th[e] extraordinary remedy faces a high bar—it must make a clear and unequivocal showing it will likely suffer irreparable harm absent preliminary relief."). Plaintiff thus isn't entitled to the relief he seeks—at least at this stage of the proceedings. Here, plaintiff can't overcome the TRO standard.

## IV.     Conclusion

The court denies plaintiff's Ex Parte Emergency Motion for Temporary Restraining Order (Doc. 9). Plaintiff's Motion for Preliminary Injunction (Doc. 9) remains pending.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Ex Parte Emergency Motion for Temporary Restraining Order (Doc. 9) is denied.

**IT IS SO ORDERED.**

**Dated this 14th day of July 2025, at Kansas City, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**

---

*1 (describing how supervisors *threatened* "putative class members" and deponents); *Reyes v. Transamerica Life Ins. Co.*, No. CV 15-3452 DMG (FFMx), 2015 WL 13414428, at *1 (C.D. Cal. Nov. 24, 2015) (granting narrow TRO amidst allegation that defendant's management team "threatened and retaliated against [p]laintiffs for their participation in [the] litigation"). Here, plaintiff neither plausibly alleges *threats* nor does he allege that defendants have taken adverse action against any *participant* in this litigation. In short, the cases granting emergency relief based on threats against witnesses differ from this one.