# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK D. EBERRA,

                       **Plaintiff**,

v.

WAL-MART ASSOCIATES, INC., et al.,

                       **Defendants**.

Case No. 25-2307-DDC-ADM

## MEMORANDUM AND ORDER

Pro se[1] plaintiff Mark D. Eberra brings this employment-discrimination lawsuit against defendants Walmart, Inc.; Wal-Mart Stores East, LP; and Wal-Mart Associates Inc. (collectively, "Walmart"). He also has sued a series of individual defendants who worked at Walmart. Walmart has filed a Motion to Dismiss (Doc. 21). And seven of the individual defendants— Dennis Hensley, Kasonga Ellis, Francine Carter, Anne Serino, Josh Holden, Malak Mohammed, and Regina Jesmore—also have filed a Motion to Dismiss (Doc. 23).

For reasons explained, below, the court grants Walmart's Motion to Dismiss (Doc. 21) and grants in part and denies in part the individual defendants' Motion to Dismiss (Doc. 23). Also before the court is plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9). The court previously denied plaintiff's request for a TRO. This

---

[1] Plaintiff proceeds pro se. The court construes plaintiff's filings liberally and "hold[s] [them] to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110. And our Circuit "'has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

Order now denies plaintiff's request for a preliminary injunction. The court explains these results, below, starting with a brief overview of plaintiff's Complaint.

## I.    Background

The court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [plaintiff], the non-moving party." *Purgatory Recreation I, LLC v. United States*, 157 F.4th 1173, 1182 (10th Cir. 2025) (quotation cleaned up). Plaintiff's Complaint is long; it spans 63 pages and alleges hundreds of facts. Trying to use the court's resources efficiently, the court confines its background discussion to a top-level summary of the Complaint, adding supplemental facts, as necessary, throughout.

Plaintiff is an African American male who previously worked at Walmart store number 1151 in Kansas City, Kansas. Doc. 1 at 1–2 (Compl. Intro. ¶ 2). The Complaint alleges a years-long discrimination and retaliation campaign at that Walmart store. Plaintiff alleges that he repeatedly complained about racial discrimination and unlawful retaliation through a variety of channels—filing internal complaints with Walmart Global Ethics and Walmart's Code of Conduct Team; complaining to managers and supervisors verbally and by email; and sending emails to Walmart CEO Doug McMillon. *Id.* at 8, 10, 12, 13, 14, 15, 16, 19, 21, 25, 27, 29, 32–33, 34, 35 (Compl. ¶¶ 22, 43, 52, 53, 55, 57, 60, 65, 69, 72, 74–76, 80, 82, 94, 95, 102, 104, 124, 135, 147–48, 165–66, 168, 170, 182, 188). As plaintiff tells it, before and after he filed these complaints, defendants orchestrated a sweeping campaign of discrimination and retaliation. Among other incidents, the Complaint alleges that defendants:

- offloaded extra work onto plaintiff and forced him to work overtime while other employees sat and socialized, *id.* at 22–23 (Compl. ¶¶ 112–13);
- yelled at plaintiff, disparaged plaintiff as incompetent, and called plaintiff derogatory names, *id.* at 23, 28 (Compl. ¶¶ 116, 142–44);
- changed plaintiff's schedule and gave him unfavorable shift times and assignments, *id.* at 9, 19, 26 (Compl. ¶¶ 29–33, 95, 130);

- publicly reprimanded plaintiff and blamed him for errors caused by white female coworkers, *id.* at 13 (Compl. ¶ 58);

- threatened to terminate plaintiff after he filed an internal complaint, *id.* at 27 (Compl. ¶ 136);

- vocally discussed pushing plaintiff out of his job in front of plaintiff's coworkers, *id.* at 26 (Compl. ¶ 131);

- spread and repeated false rumors about plaintiff stealing or mishandling money, *id.* at 29 (Compl. ¶¶ 146–47);

- solicited negative information about plaintiff and spread negative commentary about him, *id.* at 30 (Compl. ¶¶ 155–56);

- held "whites only" meetings with plaintiff's coworkers, excluding him, *id.* at 35 (Compl. ¶ 185).

Eventually, Walmart fired plaintiff for allegedly violating the company's cash-handling policy.  *Id.* at 35 (Compl. ¶ 189).  But it was plaintiff's managers who singled him out and directed him to violate company policy by moving large sums of money from registers to the money office.  *Id.* at 35–38 (Compl. ¶¶ 190–208).

Plaintiff also alleges that Walmart employed a testing protocol to filter promotion eligibility, and that this testing resulted in a racially disparate impact.  Walmart uses a computerized testing policy to screen applicants for promotion to Team Lead and Coach positions.  *Id.* at 51 (Compl. Count IV ¶ 3).  Plaintiff alleges that Walmart gave white candidates assistance on the test, allowed them to retake the test, and promoted them despite failing the test.  *Id.* (Compl. Count IV ¶¶ 4, 5).  Black candidates were denied this preferential treatment and consequently lost out on promotion opportunities.  *Id.* at 51, 52 (Compl. Count VI ¶¶ 4, 5, 8).

Plaintiff asserts five claims:

- Title VII race discrimination against Walmart, *id.* at 43–44;

- Title VII retaliatory hostile work environment against Walmart, *id.* at 45–47;

- § 1981 retaliatory hostile work environment against all defendants, *id.* at 47–50;

- Title VII disparate impact against Walmart, *id.* at 51–52; and

- Kansas Act Against Discrimination race discrimination and retaliation against Walmart, *id.* at 53–54.

Plaintiff seeks declaratory, legal, and injunctive relief—including a far-reaching injunction requiring Walmart to revamp its corporate structure and training processes. *Id.* at 55–57.

The court turns first to defendants' Motions to Dismiss.

## II.      Motion to Dismiss Legal Standard

Defendants' motions ask for relief under three Federal Rules of Civil Procedure—Rule 12(b)(6), Rule 12(b)(1), and Rule 12(e). The court outlines the legal standard for each of these rules.

### A.      12(b)(6)

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it's "'not bound to accept as true a legal conclusion

4

couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands

more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.*

(quoting *Twombly*, 550 U.S. at 555).

  **B.**  **12(b)(1)**

  Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject

matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction

and, as such, [they] must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296

F.3d 952, 955 (10th Cir. 2002).  "A court lacking jurisdiction cannot render judgment but must

dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is

lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  The party

invoking federal jurisdiction—here, plaintiff—bears the burden to prove it exists. *Kokkonen v.

Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C.

v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent

an adequate showing by the party invoking federal jurisdiction").

  Rule 12(b)(1) motions take one of two forms:  a facial attack or a factual attack. *Stuart v.

Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).  "A facial attack asserts that the

allegations in the complaint, even if true, are insufficient to establish subject matter jurisdiction.

By contrast, a factual attack on the complaint challenges the veracity of the allegations upon

which subject matter jurisdiction depends." *Cnty. Comm'rs v. U.S. Dep't of the Interior*, 614 F.

Supp. 3d 944, 951 (D.N.M. 2022) (quotation cleaned up).

C.    12(e)

A party may move for a more definite statement under Rule 12(e) when the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) motions generally are disfavored and "are properly granted only when a party is unable to determine the issues" to which he must respond. *Resol. Tr. Corp. v. Thomas*, 837 F. Supp. 354, 356 (D. Kan. 1993); *see also Smith v. Swift Transp., Co.*, No. 13-2247-RDR, 2013 WL 5551804, at *3 (D. Kan. Oct. 7, 2013) (granting Rule 12(e) motion in part because "framing a response to the plaintiff's complaint would be extremely difficult"). A court shouldn't grant a motion for a more definite statement "merely because the pleading lacks detail;" instead, the court should determine "whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission." *Advantage Homebuilding, LLC v. Assurance Co. of Am.*, No. 03-2426-KHV, 2004 WL 433914, at *1 (D. Kan. Mar. 5, 2004).

III.    **Walmart's Motion to Dismiss (Doc. 21)**

Walmart asks the court to dismiss plaintiff's disparate-impact claim and his claims for injunctive relief. The court starts with Walmart's argument that plaintiff's disparate-impact claim isn't plausible.

A.    **Disparate Impact**

"Unlike a claim for disparate treatment, a claim for disparate impact doesn't require proof of intentional discrimination." *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 922 (10th Cir. 2012). Ordinarily, plaintiffs show discriminatory effect with statistical evidence. *Mountain Side Mobile Estates P'ship v. Sec'y of Hous. & Urban Dev.*, 56 F.3d 1243, 1253 (10th Cir. 1995). Although the Supreme Court has eschewed "any rigid mathematical formula," it has "consistently stressed that statistical disparities must be sufficiently substantial that they raise . . . an inference of causation." *Watson v. Ft. Wor. Bank & Tr.*, 487 U.S. 977, 995

6

(1988); *see also Ricci v. DeStefano*, 557 U.S. 557, 587 (2009) (explaining that "a prima facie case of disparate-impact liability" is "essentially[] a threshold showing of a significant statistical disparity").

Plaintiff has failed to plead a plausible disparate-impact claim. Plaintiff hasn't pleaded any facts about the population of people who applied to and were eligible for Team Lead and Coaching positions. Nor has plaintiff pleaded any facts about the population of people who Walmart promoted to Team Lead and Coaching positions. Without facts about these two populations, plaintiff hasn't alleged plausibly that the testing protocol produced a disparate impact. *See Carpenter v. Boeing Co.*, 456 F.3d 1183, 1197 (10th Cir. 2006) ("[A]bsent a close fit between the population used to measure disparate impact and the population of those qualified for a benefit, the statistical results cannot be persuasive."); *see also Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 543 (2015) ("A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact.").

Specifically, the Complaint cites just two employment decisions to prove the disparate impact of defendants' testing program: (1) that defendant passed over plaintiff for promotion, Doc. 1 at 10 (Compl. ¶ 39), and (2) that one white associate, K.V., attained promotion even after she confessed to failing the test, *id.* at 51 (Compl. Count IV ¶ 4).[2] These two data points are

---

[2] Plaintiff's briefing alleges that another white associate told plaintiff that a supervisor gave her answers to the computerized test while she was taking it. Doc. 28 at 5. But the Complaint doesn't mention this associate. And the allegations in the Complaint—not plaintiff's briefing—control. *See Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1164 (D. Kan. 2017) ("The court does not consider allegations made in parties' briefs when deciding a motion to dismiss."); *see also Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020) (explaining that courts "only consider facts alleged in the complaint itself in evaluating the sufficiency of the complaint"). Regardless, defendant affording favorable treatment to white applicants supports plaintiff's disparate-treatment claim. But it doesn't support his disparate-impact claim.

insufficient to plead a plausible disparate-impact claim.  The Tenth Circuit routinely rejects

disparate-impact theories resting on similarly thin datasets.  *E.g.*, *Thomas v. Metroflight, Inc.*,

814 F.2d 1506, 1509 (10th Cir. 1987) ("[A] sample of two is too small to make even a 100%

impact rate significant" for a Title VII disparate-impact claim.); *Fallis v. Kerr-McKee Corp.*, 944

F.2d 743, 746 (10th Cir. 1991) (explaining that a sample size of nine "is too small to provide

reliable statistical results" and that "such a small statistical sample carries little or no probative

force to show discrimination"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1171 (10th Cir.

1991) ("A sample of one is too small to demonstrate significant impact.").[3]

The Complaint also alleges that Walmart promoted two white associates to Team Lead in

Fall 2021.  Doc. 1 at 10 (Compl. ¶ 40).  Plaintiff's response brief never cites this allegation or

explains how it fits into his disparate-impact theory.  *See* Doc. 28 at 5.  But even supposing that

this allegation adds two more data points, the Complaint fails to set out a plausible disparate-

impact theory.  The Complaint doesn't allege—even in general terms—the racial composition of

the qualified pool of applicants for Team Lead and Coach positions.  Nor does it allege the racial

composition of the population who Walmart promoted to Team Lead and Coaching positions.

Without allegations about those populations, the Complaint's disparate-impact claim can't

withstand Rule 12(b)(6) scrutiny.  *See Carpenter*, 456 F.3d at 1197 ("[A] statistical analysis

---

[3]     The Complaint alleges that despite "comprising approximately 28.8% of Walmart's hourly
workforce, Black employees account for just 9% of its corporate officers.  Conversely, White employees,
who make up roughly 52.3% of hourly workers, occupy approximately 74.5% of Walmart's officer-level
leadership roles."  Doc. 1 at 52 (Compl. Count IV ¶ 6).  But this data can't support plaintiff's disparate-
impact claim because plaintiff wasn't seeking a corporate officer role.  *See* Doc. 28 at 9 (conceding this
point and explaining that plaintiff included this "data to illustrate the broader context in which biased
testing practices occur"); *see also Carpenter*, 456 F.3d at 1197 ("[A]bsent a close fit between the
population used to measure disparate impact and the population of those qualified for a benefit, the
statistical results cannot be persuasive.").  In other words, this data about the racial composition of
Walmart's hourly workforce and corporate officers says nothing about the racial composition of the
population of people who applied and were qualified for Team Lead and Coach positions.

cannot establish a plaintiff's prima facie case unless it is based on data restricted to qualified employees, or (1) reliable data with respect to that group are unavailable and (2) the plaintiff establishes that the statistical analysis uses a reliable proxy for qualification.").[4]

Plaintiff's response brief asserts that "no African Americans were promoted to Coach at Walmart Store 1151 in 5.3 years." Doc. 28 at 1. Even if this allegation were included in the Complaint—and the court can't locate it—it wouldn't change the result. Plaintiff hasn't alleged any facts about Black applicants for Coaching and Team Lead positions. So, plaintiff hasn't offered a plausible theory that Walmart's testing program screened out Black candidates at a disparate rate. Instead, plaintiff alleges only that he didn't get the position after applying. But, as the court already has explained, evidence that one applicant didn't get a position is insufficient to make out a plausible disparate-impact theory.

The Complaint also alleges that Walmart's "administration of the testing policy has the effect of disproportionately excluding African American employees from advancement opportunities[.]" Doc. 1 at 51 (Compl. Count IV ¶ 5). But this assertion is conclusory. Plaintiff hasn't pleaded any facts making this version of his disparate-impact claim plausible. "Disparate-impact plaintiffs are permitted to rely on a variety of statistical methods and comparisons to support their claims." *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014). Still, some basic allegations about statistics or comparisons are necessary. *See id.* And here, outside

---

[4]    As the court reads it, the Complaint alleges that Walmart administered its testing program in a disparate fashion. The Complaint alleges that Walmart would allow non-Black candidates to retake the exam; provide assistance to non-Black candidates while taking the exam; and promote non-Black candidates despite them failing the exam. *See* Doc. 1 at 51 (Compl. Count IV ¶ 4). These allegations reasonably may support plaintiff's Title VII disparate-treatment claim. But they don't support his disparate-impact claim because they aren't descriptions of a neutral program resulting in disparate impact. *See Worrell v. Colo. Cmty. Bank*, No. 10-cv-00671-ZLW-BNB, 2010 WL 2943487, at *2 (D. Colo. July 21, 2010) (explaining that allegation that defendant selectively applied a policy or more harshly applied a policy to a protected group could support a disparate-treatment claim but not a disparate-impact claim).

of the allegation that plaintiff didn't attain promotion while a white colleague did, the Complaint is devoid of facts that support a disparate-impact theory.

Plaintiff cites *Adams*, for the proposition that he only needs to plead a plausible claim—not provide definitive proof of it. Doc. 28 at 9. This point is uncontroversial. But the problem remains: plaintiff hasn't pleaded a plausible disparate-impact claim. And *Adams* proves the point. The Seventh Circuit there dismissed the complaint for failing to plead a plausible disparate-impact claim, explaining that it "contain[ed] no factual allegations" about "a relevant and statistically significant disparity between black and white applicants for promotion." *Adams*, 742 F.3d at 733. *Adams* required "some basic allegations" about statistical comparisons to survive a motion to dismiss. *Id.* Like the plaintiff in *Adams*, plaintiff here has failed to plead even "basic allegations" comparing the population of applicants to the population of persons receiving promotions. *Id.* His disparate-impact claim thus fails, and the court dismisses it without prejudice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice[.]").

The court now turns to Walmart's argument that plaintiff lacks standing to seek injunctive relief.

### B.    Standing for Injunctive Relief

Walmart asks the court to dismiss plaintiff's claims that seek injunctive and equitable relief against it. Doc. 22 at 8–10. Plaintiff's Complaint seeks a sweeping injunction against Walmart in the form of a court order directing

> Defendant to cease and desist from all discriminatory and retaliatory practices, and to implement appropriate policies, training, and oversight to prevent future violations. Including requiring Walmart to commence an immediate large scale systemic change and corporate restructuring process to dismantle the illegal racial employment hierarchy in which whites maintain the top executive positions, with brown and Latin races in the middle management positions, and mostly Blacks at

the bottom of hourly employment that has been maintained by Walmart for 62 years.

Doc. 1 at 56 (Compl. Prayer ¶ 3). Plaintiff also asks for equitable relief in the form of a court order directing Walmart to revamp its testing program. *Id.* (Compl. Prayer ¶ 4).

The court agrees with Walmart. Plaintiff lacks standing to seek this relief, so the court dismisses plaintiff's claims for injunctive and equitable relief. The court explains this result, starting with a brief overview of standing doctrine.

"Article III of the Constitution permits federal courts to decide only 'Cases' or 'Controversies.'" *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quoting U.S. Const. art. III, § 2). "'To establish a case or controversy, a plaintiff must possess standing to sue.'" *Id.* (quoting *S. Furniture Leasing, Inc. v. YRC, Inc.*, 989 F.3d 1141, 1145 (10th Cir. 2021)). "For Article III standing, a plaintiff must have (1) 'suffered an injury in fact,' (2) that is 'fairly traceable to the challenged action of the defendant,' and (3) that is likely to be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Standing doctrines apply equally to plaintiffs seeking injunctive relief. Only "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).

Here, plaintiff lacks standing to seek injunctive relief. Plaintiff hasn't alleged that he faces any "risk of harm" that "is sufficiently imminent and substantial." *Id.* at 435. "An alleged future injury is sufficiently imminent 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Laufer*, 22 F.4th at 879 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The Complaint offers no allegation that plaintiff faces a "certainly impending" injury from Walmart's conduct. *Id.* (quotation cleaned up). The

Complaint alleges only that Walmart harmed him in the past. But the Complaint doesn't provide any reason to believe that such harms will reoccur.

Courts routinely dismiss plaintiffs' requests for injunctive relief against their former employers. *E.g.*, *Young v. Colo. Dep't of Corr.*, No. 22-cv-00145-NYW-KLM, 2023 WL 1437894, at *12 (D. Colo. Feb. 1, 2023) (collecting cases); *Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012) ("[Plaintiff], who is no longer employed by the University and is not entitled to reinstatement, cannot demonstrate harm by claiming imminent enforcement of the policy."); *Roberts v. Target Corp.*, No. CIV-11-951-HE, 2012 WL 2357420, at *3 (W.D. Okla. June 20, 2012) (explaining that "former employees do not have standing to seek prospective injunctive relief"). Plaintiff argues he might reapply for employment at Walmart. Doc. 28 at 13. But the Complaint doesn't allege that plaintiff has any intent to reapply, so the court declines to consider this assertion. Regardless, a vague intent to reapply suggests that any future harm plaintiff could face is "conjectural or hypothetical[,]" which won't do. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 109 (10th Cir. 2024) (quotation cleaned up).

Plaintiff insists he has standing. Doc. 28 at 13–14. He cites his TRO allegations to support this position. *Id.* at 13. But plaintiff hasn't asserted claims based on these allegations, which invoke witness chilling, evidence destruction, celebrating alleged harassers, and blacklisting plaintiff. And it's not at all clear that the sweeping injunction plaintiff seeks would have any effect on his TRO allegations. *See Rocky Mountain Gun Owners*, 121 F.4th at 111 (explaining that redressability "requires it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (quotation cleaned up)). At best, the requested injunction might redress his injuries, but that's not good enough. *Id.* ("A showing that the relief requested *might* redress the plaintiff's injuries is generally insufficient to satisfy the redressability

requirement[.]" (emphasis in original) (quotation cleaned up)).  So, the court rejects plaintiff's

assertion that he has standing based on his TRO allegations.

In sum, plaintiff lacks standing to seek sweeping injunctive relief against Walmart.  The

court thus lacks jurisdiction over his claims to the extent they seek this form of relief.  The court

now dismisses without prejudice plaintiff's claims for injunctive relief.  *See Brereton v.*

*Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (instructing that dismissals for lack

of jurisdiction "must be without prejudice").[5]

The court next addresses the individual defendants' Motion to Dismiss (Doc. 23).

## IV.        Individual Defendants' Motion to Dismiss (Doc. 23)

Three of the individual defendants ask the court to dismiss plaintiff's § 1981 retaliatory-

hostile-work-environment claim.  The individual defendants also ask the court to dismiss

plaintiff's Title VII and KAAD claims.  In the alternative, they've moved for a more definite

statement on the issue whether plaintiff has asserted Title VII and KAAD claims against them.

The court takes up each request in turn, below.

### A.        § 1981 Retaliatory Harassment

A § 1981 retaliation claim requires a plaintiff to "prove that [he] engaged in protected

activity, that the defendants took adverse action against[him], and that there was a causal

---

[5]        The court denies plaintiff's Motion for Leave to File Sur-Reply (Doc. 33).  "Our court's local
rules limit briefing on motions to the motion (with memorandum in support), a response, and a reply."
*Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1142 (D. Kan. 2020) (citing D. Kan. Rule 7.1(a),
(c)), *aff'd*, No. 20-3175, 2021 WL 3237082 (10th Cir. July 30, 2021).  "'Surreplies are typically not
allowed.'"  *Id.* (quoting *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd*, 189 F. App'x
752 (10th Cir. 2006)).  Plaintiff asserts that his sur-reply is warranted because, in its reply, Walmart made
new arguments about his disparate-impact claim and Supreme Court precedent governing injunctions.
Doc. 33 at 1–2.  The court disagrees.  Walmart made a fulsome argument that plaintiff's disparate-impact
claim failed the Rule 12(b)(6) standard in its opening brief.  *See* Doc. 22 at 3–8.  Likewise, in its opening
brief, Walmart explicitly argued that plaintiff lacks standing to seek injunctive relief.  *See id.* at 8–10.
Whatever gloss defendant applied in its reply brief doesn't amount to new arguments.  The court, in its
discretion, thus denies plaintiff's Motion for Leave to File Sur-Reply (Doc. 33).

relationship between the protected activity and the adverse action." *Lindsay v. Denv. Pub. Schs.*, 88 F.4th 1323, 1327 (10th Cir. 2022). "To show an adverse action for a retaliation claim under § 1981, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1224 (10th Cir. 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "The action must be materially adverse to separate significant from trivial harms, such as petty slights, minor annoyances, and simple lack of good manners." *Id.* at 1225 (quotation cleaned up). A hostile work environment may rise to the level of a materially adverse employment action and thus support a retaliation claim. *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264–65 (10th Cir. 1998). A hostile-work-environment claim requires conduct that is "sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity." *Adcox v. Brennan*, No. 15-cv-9258-JWL, 2017 WL 2405326, at *7 (D. Kan. June 2, 2017).[6]

Unlike Title VII, individuals may face liability under § 1981. "A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Allen v. Denv. Pub. Sch. Bd.*, 928 F.2d 978, 984 (10th Cir. 1991), *overruled on other grounds by*,

---

[6]    The individual defendants have cited some case law about Title VII hostile-work-environment claims. *E.g.*, Doc. 24 at 5–6. But the legal standard governing those claims isn't the same as the standard governing *retaliatory*-hostile-work-environment claims. The standard for a retaliatory-hostile-work-environment claim is whether the harassment is "'sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity.'" *Bermudez v. City of Topeka*, No. 18-CV-4141-HLT-ADM, 2020 WL 206766, at *7 (D. Kan. Jan. 14, 2020) (quoting *Adcox*, 2017 WL 2405326, at *7). This differs from the standard for a hostile-work-environment claim, which asks whether "the defendant's conduct was so severe or pervasive as to alter the terms or conditions of employment." *Throupe v. Univ. of Denv.*, 988 F.3d 1243, 1252 (10th Cir. 2021); *see also Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1207 (11th Cir. 2021) (explaining statutory origins of this difference).

*Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d 1220, 1228 (10th Cir. 2000). "There must be some affirmative link to causally connect the actor with the discriminatory action." *Id.* So, "an individual defendant can be held liable under § 1981 if the individual defendant was personally involved in the discriminatory conduct." *Flores v. City and County of Denver*, 30 F. App'x 816, 819 (10th Cir. 2002); *see also Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986) (explaining that individuals who "intentionally caused" a violation of plaintiff's § 1981 rights or who "authorized, directed, or participated in the alleged discriminatory conduct . . . may be held liable"), *aff'd on other grounds*, 481 U.S. 604 (1987).[7]

The court thus starts by determining whether plaintiff has stated a plausible retaliatory-hostile-work-environment claim. Concluding that he has, the court then explains the specific facts that plaintiff has alleged against Carter, Mohammed, and Jesmore. For each defendant, the court assesses whether plaintiff has alleged a sufficient affirmative link between the defendant's conduct and the retaliatory hostile work environment.

Viewed in the light most favorable to plaintiff, the Complaint plausibly alleges that plaintiff suffered a hostile work environment that was sufficiently severe or pervasive to dissuade a reasonable worker from engaging in protected activity. Plaintiff alleges that defendants gave him unfavorable assignments and shifts; disparaged him publicly; threatened to fire him; reprimanded him for errors caused by his coworkers; and held "whites only" meetings that excluded him. Cumulatively, these allegations plausibly might dissuade a reasonable worker

---

[7]     The individual defendants might have argued that they can't incur liability because their actions—alone—couldn't create a hostile work environment. Doc. 24 at 5–10. The key word there? Might. Defendants' briefing on this issue is thin. The proper causation standard matters too much for the court to weigh in without more fulsome briefing. And defendants, of course, have the burden on a motion to dismiss. 5B *Wright & Miller's Federal Practice & Procedure* § 1357 (4th ed. 2025) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists."). So, to the extent defendants have made this argument, the court rejects it as underdeveloped.

from filing a charge of discrimination. *See Adcox*, 2017 WL 2405326, at *8 (concluding that evidence that defendant subjected plaintiff to heightened scrutiny, criticized her over minor flaws in the presence of coworkers, denied leave requests, interrupted breaks, and threw mail at her was sufficient to survive summary judgment on retaliatory-hostile-work-environment claim); *Wilson v. Mercury Mgmt., LLC*, No. 23-2245-KHV, 2023 WL 6961987, at *4 (D. Kan. Oct. 20, 2023) (finding allegation that "plaintiff experienced unequal job assignments and unequal application of policies and rules" sufficient to survive motion to dismiss). So, at this early stage of these proceedings, plaintiff's allegations suffice. They state a plausible § 1981 retaliatory-hostile-work-environment claim.

The court now turns to the three defendants who have asked the court to dismiss plaintiff's § 1981 claim—Carter, Mohammed, and Jesmore.

### 1.    Carter

Plaintiff's allegations assert that Carter, a Team Lead, unfairly forced plaintiff to swap roles with a white associate. Doc. 1 at 9 (Compl. ¶¶ 28–33). Plaintiff also alleges that Carter mocked his work ethic when he tried to resist this change. *Id.* (Compl. ¶ 28). He further asserts that Carter assigned plaintiff false attendance points, solicited negative information about plaintiff from coworkers, and falsely accused plaintiff of terminating an associate. *Id.* at 21 (Compl. ¶ 107). Cumulatively, these allegations suggest that Carter played a role in the alleged hostile work environment. Plaintiff has thus alleged a sufficient "affirmative link" between Carter and the retaliatory hostile work environment to survive her motion to dismiss. *Allen*, 928 F.2d at 984.

### 2.    Mohammed

Mohammed, a Team Lead and then Coach, Doc. 1 at 7, 28–29 (Compl. ¶¶ 16, 144–145), allegedly influenced an associate to spread negative commentary about plaintiff's competence.[8] She also continuously circulated false rumors that Walmart was about to fire plaintiff for losing or stealing $2,500.  *Id.* at 29 (Compl. ¶¶ 146–47).  Again, these allegations suffice.  Viewed in the light most favorable to plaintiff, the Complaint alleges that Mohammed had a substantial role in cultivating a hostile work environment for plaintiff.  The court thus denies Mohammed's request to dismiss plaintiff's § 1981 claim.

### 3.    Jesmore

Finally, Jesmore, another former Team Lead at Walmart, also allegedly contributed to creating a hostile work environment.  *Id.* at 7 (Compl. ¶ 17).  She, for instance, spread rumors that plaintiff made up his medical condition when he took leave.  *Id.* at 19 (Compl. ¶ 92). Plaintiff also alleges that Jesmore physically blocked him from supervising and communicating with an associate.  *Id.* (Compl. ¶ 93).  Jesmore falsely accused plaintiff of posing a threat to her over the store's walkie system.  *Id.* (Compl. ¶ 94).  And Jesmore yelled at plaintiff and ordered him around as though he were a subordinate, even though plaintiff and Jesmore were both Team Leads.  *Id.* at 23 (Compl. ¶¶ 115–16).  Once more, taking these allegations as true, a reasonable factfinder reasonably could find or infer that Jesmore played an active role in bullying plaintiff and creating a hostile work environment.  So, the court denies Jesmore's request to dismiss plaintiff's § 1981 claim against her.

---

[8]    Mohammed asserts that plaintiff's use of the word "influence" is "meaningless."  Doc. 24 at 8. The court disagrees.  Although a clearer factual allegation is preferable, plaintiff has alleged adequately that Mohammed played a part in associates gossiping negatively about plaintiff by inducing that conduct.

In short, according to the Complaint's allegations, Carter, Mohammed, and Jesmore each played a substantial role in creating a hostile work environment on their own. At this early stage of these proceedings, that suffices to survive a motion to dismiss. The court thus denies these defendants' request to dismiss plaintiff's § 1981 retaliatory-hostile-work environment claim against them.

B.      Title VII Claims

The individual defendants assert that Title VII and KAAD claims aren't available against individuals. They thus ask the court to dismiss these claims or, alternatively, for a more definite statement under Rule 12(e) to clarify that plaintiff's Title VII and KAAD claims aren't asserted against them. Doc. 24 at 3–4. Plaintiff asserts that the Complaint clearly asserts its Title VII claims against the corporate defendants only. Doc. 29 at 13. But he doesn't oppose a court order clarifying that he doesn't assert his KAAD claim against the individual defendants.

The court agrees with plaintiff's reading of the Complaint. Plaintiff's Title VII claims—listed in Counts I, II, and IV—don't name any individual defendants. *See* Doc. 1 at 43–47, 51–52. So, the court needn't dismiss these claims, and plaintiff needn't clarify his claim further. But plaintiff's KAAD claim does name some of the individual defendants. *Id.* at 53 (Compl. Count V ¶ 4). Because plaintiff doesn't oppose it, the court now grants defendants' motion and clarifies that plaintiff doesn't assert his KAAD claim against any individual defendant. After this Order, everyone agrees that plaintiff doesn't intend to assert his Title VII or KAAD claims against any individual defendant.[9]

---

[9]      The court denies plaintiff's second Motion for Leave to File Sur-Reply (Doc. 35). Again, whatever new gloss that defendants have spun in their reply brief isn't the same as raising new arguments. The court, in its discretion, denies plaintiff's request for leave to file an additional brief on this matter.

The court takes up plaintiff's request for a preliminary injunction, next, starting with the governing legal standard for such a motion.

## V.        Preliminary Injunction Standard

A litigant seeking a preliminary injunction must show:  (1) that he's substantially likely to succeed on the merits; (2) that he will suffer irreparable injury if the court denies the requested relief; (3) that his threatened injury without the restraining order outweighs the opposing party's injury under the restraining order; and (4) that the requested relief is not adverse to the public interest.  *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).

To secure preliminary relief, a "movant must make a clear and unequivocal showing" on all four requirements.  *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021) (quotation cleaned up).  And, in our Circuit, when "the failure to satisfy one factor is dispositive, a court need not consider the other factors" for preliminary relief.  *Id.* at 890 (declining to consider the remaining factors where plaintiff failed to show irreparable harm).  The decision whether to issue "preliminary injunctive relief is within the sound discretion of the district court."  *Sac & Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 906 (D. Kan. 1995).

## VI.        Preliminary Injunction Analysis

The court denies plaintiff's Motion for Preliminary Injunction (Doc. 9) for the same reason that it denied his request for a temporary restraining order—*viz.*, he's failed to carry his heavy burden to prove he's entitled to it.  Specifically, plaintiff hasn't demonstrated that he'll face irreparable or imminent harm in the absence of preliminary relief.  *See* Doc. 17 at 4–9.  The court's TRO analysis applies equally here.  *See id.*  Because the court already has provided a fulsome explanation why plaintiff hasn't shown that he's entitled to the "extraordinary remedy" of a preliminary injunction, the court won't reinvent that wheel now.  *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 752 (10th Cir. 2024) (quotation cleaned up).

But summarizing briefly, the court has concluded that plaintiff couldn't carry his preliminary-relief burden.  Plaintiff's motion describes several categories of purported abuse by Walmart—witness chilling, celebrating alleged perpetrators, destroying evidence, and blacklisting plaintiff.  Doc. 9 at 4–8.  None of these allegations suffice to overcome the exacting standard for preliminary relief.  Specifically, plaintiff's assertions about witness chilling and evidence destruction are speculative and don't suggest imminent and irreparable harm.  Plaintiff hasn't explained why the ordinary discovery process won't suffice to overcome any harm he'd face from witness chilling and evidence destruction.  Nor has plaintiff asserted a basis for the court to conclude that he'll suffer imminent harm based on these allegations in the absence of preliminary relief.  Likewise, plaintiff's assertion that Walmart celebrated an alleged perpetrator was insufficient because this allegation didn't cause a concrete harm to plaintiff, and plaintiff didn't allege that Walmart likely would repeat this action.  Finally, plaintiff failed to support his blacklisting allegation with any evidence.

This rationale all applies to plaintiff's request for a preliminary injunction, too.  As alleged, plaintiff won't suffer imminent and irreparable harm in the absence of preliminary relief.  The court thus denies his Motion for Preliminary Injunction (Doc. 9).

## VII.      Conclusion

Plaintiff hasn't pleaded a plausible disparate-impact claim.  So, the court dismisses it without prejudice.  Plaintiff also lacks standing to seek injunctive relief, so the court dismisses without prejudice his claims for injunctive relief against Walmart.  In contrast, plaintiff has pleaded a plausible § 1981 retaliatory-hostile-work-environment claim.  And he has alleged plausible facts tying Carter, Mohammed, and Jesmore to that hostile work environment.  So the court denies those defendants' request to dismiss plaintiff's § 1981 claim.  Plaintiff now has clarified that he doesn't intend to bring his Title VII or KAAD claims against any individual

defendant, so the court grants the individual defendants' motion to the extent it seeks that clarification. Finally, the court denies plaintiff's request for a preliminary injunction because plaintiff hasn't shouldered his burden to prove he's entitled to it.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Walmart, Inc.; Wal-Mart Stores East, LP; and Wal-Mart Associates Inc.'s Motion for Partial Dismissal (Doc. 21) is granted.

**IT IS FURTHER ORDERED THAT** defendants Francine Carter, Kasonga Ellis, Dennis Hensley, Josh Holden, Regina Jesmore, Malak Mohammed, and Anne Serino's Motion for Partial Dismissal (Doc. 23) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Leave to File Sur-Reply (Doc. 33) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Leave to File Sur-Reply (Doc. 35) is denied.

**IT IS SO ORDERED.**

**Dated this 27th day of February, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**